IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HAROLD B. DAVIS | ) | |
| | ) | |
| v. | ) | No. 3:13-0238 |
| | ) | Judge Campbell/Bryant |
| WILSON COUNTY, TENNESSEE | ) | |

To: The Honorable Todd Campbell, District Judge

### REPORT AND RECOMMENDATION

Currently pending in this action is defendant Wilson County's motion to dismiss. (Docket Entry No. 29) The motion is fully briefed, and has been referred to the undersigned for recommendation on disposition. (Docket Entry No. 68) For the reasons given below, the Magistrate Judge recommends that defendant's motion to dismiss be DENIED.

### Statement of the Case

In his First Amended Complaint (Docket Entry No. 23), plaintiff Harold B. Davis generally pleads that, despite its published guidelines for avoiding the appearance of impropriety when County offices employ relatives of current employees, "in practice Wilson County government officials routinely violate these policies with no consequences and otherwise generally practice nepotism and favoritism as a matter of course." Id. at 2, ¶ 7. Plaintiff then alleges numerous examples of "this county-wide practice and pattern of nepotism[.]" Id. at 2-7. Plaintiff further alleges, by reference to particular examples in recent years, that Wilson County has a history of failing to publish job openings, of

tolerating discriminatory language in the workplace, and of significantly underemploying African-Americans in the County workforce. In particular, plaintiff details the experiences of Mr. Karl Tartt in attempting to gain employment with the County and being thwarted by, *inter alia*, the County's failure to keep his application on file.[1] Id. at 15-18. Plaintiff then alleges his own experience of applying for employment in various County offices, only a fraction of which responded to his application or kept his materials on file, despite the County's explicit document retention policies which mandate that such application materials be retained. Id. at 18-25. The general allegations of plaintiff's complaint conclude as follows:

> Mr. Davis was not given a fair "**opportunity**" to compete equally with others for current job openings or future job openings on his particular qualifications and merit and without regard to the color of his skin if his resumes are not kept on file and otherwise destroyed or lost. Nor is Mr. Davis afforded an equal opportunity to compete for jobs when he does not know of any job openings.
>
> This county-wide practice and pattern of cronyism, nepotism, and favoritism and word of mouth job referral system by an all-white supervisory pool is rooted in racial animus, as described in detail above, with the intent of keeping African Americans out of the Wilson County work force. Additionally, without regard to intent, this subjective hiring system has a disparate impact on African Americans by keeping them out of the pool of individuals who could be considered for available jobs and denying them a fair and equal opportunity to compete for those jobs based on merit and without regard to their race or color of skin.

Id. at 25-26, ¶¶ 170-71 (emphasis in original).

The complaint concludes by asserting three counts of unlawful racial

---

[1] Mr. Tartt, represented by counsel who also represents plaintiff Davis here, has litigated his dispute with Wilson County to final judgment in case number 3:09-1179. Mr. Tartt and his co-plaintiff, Mr. Jennings, have noticed their appeal of this Court's judgment to the Sixth Circuit, and the matter there awaits payment of the appellate filing fee. (Case No. 3:09-1179, Docket Entry No. 126)

discrimination in the form of disparate treatment (under 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Act of 1964 ("Title VII"); and the Tennessee Human Rights Act (THRA), respectively) and two counts of unlawful racial discrimination in the form of disparate impact (under Title VII and the THRA, respectively). Plaintiff seeks compensatory damages, as well as "[i]njunctive relief compelling Defendant to maintain all employment records in compliance with law and their own record retention policy, to not destroy job applications, to advertise job openings in a manner that ensures broad messaging to the entire regional labor pool, including minorities, and to not discriminate on the basis of race and any other remedies this Court deems fit to correct historic discrimination[.]" Id. at 30-31.

By its motion, defendant seeks dismissal of plaintiff's claims under § 1983, Title VII, and the THRA on statute of limitations grounds. Beyond the issue of timeliness, Defendant further seeks dismissal of all claims on grounds of failure to state a claim upon which relief can be granted.

Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although FED. R. CIV. P. 8(a)(2) requires merely "a short and plain statement of the claim," the plaintiff must allege enough facts to make the claim plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). The Plaintiff must plead well enough to ensure that his or her complaint is more than "a formulaic

3

recitation of the elements of a cause of action." Twombly, 550 U.S at 555. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). Nevertheless, this Court need not accept legal conclusions or unwarranted factual inferences as true, Iqbal, 556 U.S. at 677-78; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987), and a complaint containing mere legal conclusions alone will "not unlock the doors of discovery for a plaintiff." Iqbal, 556 U.S. at 678.

Conclusions of Law

1. Disparate Treatment

    a. Statute of Limitations; Exhaustion of Administrative Remedies

Defendant argues that the disparate treatment counts of plaintiff's complaint allege a discriminatory employment action, in the form of a refusal to hire plaintiff, which the courts have characterized as a "discrete act" of intentional discrimination. See, e.g., National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Such discriminatory acts must be the subject of an administrative charge of discrimination filed before the Equal Employment Opportunity Commission (EEOC) within 300 days of the act's occurrence in the case of Title VII claims also presented to the state agency,[2] or before the Tennessee

---

[2]"Tennessee is a 'deferral state' for purposes of the federal discrimination statutes. In a deferral state, when a plaintiff institutes the relevant state proceedings . . . he must file his EEOC charge within 300 days of the alleged discrimination. While the 300-day bar is not jurisdictional, it does have the effect of a statute of limitations, and is not to be waived without good cause." Tartt v. City of Clarksville, 149 Fed. Appx. 456, 460 (6th Cir. Sept. 13, 2005) (citing, e.g., Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 375-76 (6th Cir. 2002)).

Human Rights Commission within one year in the case of THRA claims. Plaintiff responds that "he *does not* allege that the unfair employment action was the 'failure to hire' him. . . . Rather, he complains that he was not given a 'fair '**opportunity**' to compete equally with others for current job openings or future job openings on his particular qualifications and merit and without regard to the color of his skin [when] his resumes [were] not kept on file and otherwise destroyed or lost.'" (Docket Entry No. 60 at 7) (emphasis and modifications in original) Plaintiff further argues generally that motions to dismiss based on alleged untimeliness of the claims in suit are disfavored, such that dismissal on such grounds are only appropriate where the running of the statute is apparent on the face of the complaint. Citing, e.g., Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006), and Hollander v. Brown, 457 F.3d 688, 691 (7th Cir. 2006). Accordingly, plaintiff contends that

> Since the actual date of when his job applications were destroyed by at least 11 separate Wilson County departments is not apparent on the face of the complaint and, in fact, is unknown, this Court cannot ascertain the exact date of the alleged unfair labor practice related to the act of destroying his applications. Therefore, it cannot begin to count the 300 days by which Mr. Davis needed to file. Nor can the date he filed (or even whether he ever filed) a charge of discrimination with the EEOC be established because this is not apparent on the face of the complaint either. . . .
>
> Simply put, Defendant cannot support a statute of limitations defense in a motion to dismiss where the date of the alleged unlawful employment practice and the date of filing an EEOC charge are not apparent on the face of the complaint. . . .
>
> [5]. . . Mr. Davis never pled that he filed an EEOC charge in his complaint or amended complaint nor did he admit that he ever received or failed to receive a right to sue letter. He clearly is not required to plead this . . . . Whether he ever filed or whether he ever received a right to sue letter is an open question of fact that should be resolved in a summary judgment motion, not a motion to dismiss.

(Docket Entry No. 60 at 7-8 & n.5)

Defendant's frustration with plaintiff's complaint is its revelation that, after plaintiff inquired about County jobs in person on March 6, 2011, he sent 28 letters with résumés to various County offices seeking employment, revealing in those letters that he was an African-American, and as of May 19, 2011, plaintiff had heard back from only 5 of those offices. In the period following May 19, 2011, plaintiff's complaint reveals a period of more than a year in which he neither heard anything from the other 23 County offices to which he had applied, nor did he make any attempt to recontact said offices. This period of silence and inaction from all involved extended until August 16, 2012, when plaintiff and his lawyer finally undertook to obtain records establishing whether or not the various offices had kept plaintiff's application materials on file. According to defendant, somewhere in this nearly 15 months of inactivity, the statutory clock must have begun ticking, as plaintiff reasonably should have known that he had been wronged prior to August 2012.

Plaintiff correctly asserts that Title VII's timely exhaustion requirement is not jurisdictional, but instead amounts to a condition precedent to bringing suit in district court. See, e.g., Allen v. Highlands Hosp. Corp., 545 F.3d 387, 401-02 (6th Cir. 2008). He has crafted his complaint in such a way as to create ambiguity concerning the timing and even the existence of any attempt to exhaust his administrative remedies, and so has, in the undersigned's view, succeeded in thwarting defendant's efforts to secure dismissal on a Rule 12(b)(6) motion for untimeliness.[3] Moreover, plaintiff's inability to pinpoint the timeframe

---

[3] The failure to exhaust Title VII administrative remedies is not jurisdictional and therefore not assailable under Rule 12(b)(1), and consequently plaintiff is not required to prove, in response to the instant Rule 12(b)(6) motion to dismiss, that he exhausted timely. See Dillon v. Frank, 952 F.2d 403, 1992 WL 5436, at *2 (6th Cir. Jan. 15, 1992) (citing Rogers v. Stratton Indus., 798 F.2d 913 (6th

6

for any discrete acts of discrimination in the form of destruction of his application materials is, at this early stage of the proceedings, sufficient reason to allow his claim of disparate treatment pursuant to the THRA, which requires that suit be filed within one year after a discrete act of discrimination ceases. Tenn. Code Ann. § 4-21-311(d); see Booker v. The Boeing Co., 188 S.W.3d 639, 646-47 (Tenn. 2006).

However, as regards plaintiff's suggestion that he may have attempted to exhaust his remedies before the EEOC too late or not at all, his argument that he can somehow rely upon Mr. Tartt's 2008 EEOC filing pursuant to the "single-filing rule" is entirely devoid of merit. The single-filing rule, recognized in 1994 by the Sixth Circuit as an exception to the EEOC filing requirement, states that "in a multiple-plaintiff, non-class action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement." Equal Employment Opportunity Comm'n v. Wilson Metal Casket Co., 24 F.3d 836, 839-40 (6th Cir. 1994) (quoting Ezell v. Mobile Hous. Bd., 709 F.2d 1376, 1381 (11th Cir. 1983)). Plaintiff has

---

Cir. 1986)). However, the Sixth Circuit has taken a dim view of such artful pleading and steadfast silence in the face of a Rule 12(b)(6) challenge to the viability of a complaint which appears on its face to be untimely, ruling that the plaintiffs' refusal to produce information which was in their possession because "any inquiry into this issue is premature" on a Rule 12 motion justified the adverse inference that such unproduced information is harmful to the plaintiffs, and affirming the dismissal of the complaint on that basis. Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 521-22 & n.1 (6th Cir. 2008). While Bishop is distinguishable on its facts from the instant case, the undersigned likewise dimly views plaintiff's glib assertion that defendant's frustration with his silence on the exhaustion issue is understandable, and plaintiff's invitation of a motion for partial summary judgment if, in discovery, it is revealed that he has not properly exhausted his Title VII claims. (Docket Entry No. 67 at 7) Indeed, regardless of any requirement that plaintiff affirmatively plead his exhaustion of administrative remedies, his obstinate silence in the face of defendant's motion could readily be viewed as sanctionable conduct if it turns out that his Title VII claims are not properly exhausted.

failed to cite any authority for the asserted proposition that, as a potential member of a putative class of plaintiffs in Tartt, he then acquired and now retains, for purposes of his separate filing of an entirely new lawsuit, the benefit of Tartt's timely exhaustion of remedies. The cases support the proposition that if, after the January 2012 denial of the motion to certify the class in Tartt, plaintiff had been able to intervene in that case as party plaintiff, then he could have litigated his case against defendant without timely exhausting his remedies before the EEOC, pursuant to the single-filing rule. However, plaintiff did not seek to join that litigation, and the undersigned can find no authority for the notion that any such benefit which plaintiff might have acquired from Tartt's EEOC filing would carry forward to the filing of a new lawsuit more than a year after the denial of class action status in Tartt. To the contrary, the undersigned is persuaded by the Fifth Circuit's analysis of this point, as follows:

> It is also clear from *Bettcher* [*v. The Brown Schools, Inc.*, 262 F.3d 492 (5th Cir. 2001)] that this Circuit intended for the single filing rule only to permit a non-charging party to join or intervene in a lawsuit filed by a charging party who has properly exhausted the administrative requirements. Unlike the situation in *Bettcher*, Price has actually filed a suit in which the Cleveland Plaintiffs could have attempted to join. However, the Cleveland Plaintiffs decided not to "opt-in" to the Price lawsuit. Instead, the Cleveland Plaintiffs filed their own separate suit and attempted to piggyback on the Price EEOC charge. The Cleveland Plaintiffs would now have us read *Bettcher* as allowing the extension of the single filing rule to permit the Cleveland Plaintiffs to file an independent suit on an otherwise unexhausted Title VII claim. *Bettcher* does not contemplate such use of the single filing rule. A non-charging party cannot bring her own independent lawsuit based upon another party's charge. To allow otherwise would "threaten to consume the statutory rule, which clearly requires all [Title VII] plaintiffs to file a charge before filing a lawsuit."

Price v. Choctaw Glove & Safety Co., Inc., 459 F.3d 595, 599 (5th Cir. 2006). The undersigned finds this analysis compelling as applied to the instant case, where plaintiff did

8

not participate in the Tartt case other than as a putative member of a class that was never certified, and now would have the Court extend the single-filing exception in a manner that would swallow the exhaustion rule. The undersigned would decline to do so.

### b. Claim for Individual Disparate Treatment vs. "Systemic Disparate Treatment" vs. "Pattern-or-Practice" of Disparate Treatment

Defendant argues that "Plaintiff has indicated in earlier pleadings that he is not alleging a claim under an individual disparate treatment theory," but that even if such a claim is alleged, it is subject to dismissal for failure to plead sufficient facts in support of the familiar prima facie elements of such a claim under McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973).[4] (Docket Entry No. 13 at 30 & n.3) Specifically, defendant argues that plaintiff has only generally pled that he was qualified for employment with Wilson County because he possesses a college degree and County jobs are largely entry-level jobs which require only a high school diploma; that the alleged destruction of his job applications despite the County's published record retention policies does not amount to an adverse employment action; and, that plaintiff has not alleged that he was treated differently from similarly situated persons outside of the protected class.

Plaintiff responds to these arguments by denying ever giving any indication that he is not alleging a claim under an individual disparate treatment theory; by confirming that he is asserting such a claim based on his alleging "26 pages of facts showing a practice, pattern, and de facto policy of destroying job applications of black applicants and of failing to

---

[4]Defendant recites these elements as including: (1) that plaintiff belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that he was treated differently from similarly situated persons who were not within the protected class. (Docket Entry No. 30 at 13)

9

advertise job openings and instead using a word-of-mouth referral system that has a disparate impact on African Americans[;]" and, by noting that he is not required to recite the prima facie elements in his complaint. (Docket Entry No. 60 at 11) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)). Plaintiff then proceeds to cite various cases for the proposition that such allegations and statistical evidence as plaintiff has included in his amended complaint are sufficient to make a prima facie showing of discrimination for both disparate treatment and disparate impact claims. He concludes his argument by stating as follows:

> The plaintiff need not show, as asserted by the defendant herein, that a job was vacant and that the plaintiff was qualified for the job. This is simply an erroneous statement of law in a practice and pattern case. . . . All Plaintiff needs to show is that Wilson County has a practice and pattern of destroying job applications of black applicants while retaining those of white applicants as its standard operating procedure. . . .

(Docket Entry No. 60 at 16 & n.4) Meanwhile, defendant had argued in its motion that such a model is employed in cases of "systemic," not individual disparate treatment, and that individuals may not bring such a claim except as part of a certified class action, citing authority from the Fourth, Eighth, and Eleventh Circuits.[5] (Docket Entry No. 30 at 18-19)

In fact, our own Sixth Circuit Court of Appeals has held that

> [T]he pattern-or-practice method of proving discrimination is not available to individual plaintiffs. We subscribe to the rationale that a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case. . . . However, pattern-or-practice

---

[5]"Systemic" disparate treatment appears to refer to disparate treatment in execution of a system-wide pattern or practice of discrimination. Thus, a "systemic" discrimination claim and a "pattern-or-practice" discrimination claim appear to be one and the same.

10

evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework.

Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 575 (6th Cir. 2004). See also Serrano v. Cintas Corp., 699 F.3d 884 (6th Cir. 2012), wherein the court provides a thorough exposition of the evidentiary frameworks through which intentional discrimination may be proved, including the distinction between individual claims under McDonnell Douglas and pattern-or-practice claims under International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977), as well as reinforcement of the pleading requirements underscored in Swierkiewicz and Twombly, supra.

In short, this case is not a pattern-or-practice case, as it is not a class action, nor an action brought by the EEOC or the United States government at large. See also Herendeen v. Michigan State Police, 39 F.Supp.2d 899, 905-06 (W.D. Mich. 1999) (cited in Serrano, supra). Plaintiff will indeed have to ultimately prove specific instances in which he was discriminated against, either by direct evidence or through the circumstantial approach of McDonnell Douglas. Id. at 906 (quoting Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 760 (4th Cir. 1998), for the proposition that "pattern or practice evidence may be useful in an individual discrimination claim 'to prove the fourth element of a prima facie case, that the individual's adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination...'"). However, the undersigned must conclude that the allegations of the amended complaint which are particularized to plaintiff's applications for employment, his qualifications, the retention policies of defendant, and the failure to retain his applications despite said policies, combined with the allegations supporting the existence of an overarching County policy of discriminating against African American applicants

generally, are sufficient to carry the day for plaintiff at the pleading stage of this action. His claims of disparate treatment under Title VII, the THRA, and 42 U.S.C. §§ 1981 and 1983 are sufficiently stated to withstand defendant's motion to dismiss.

2. *Disparate Impact*

Although defendant challenges plaintiff's standing to pursue his disparate impact claims, the allegations of the amended complaint, taken as true, as well as the anecdotal evidence cited therein, easily raise the inference that plaintiff's various job applications were futile in light of the policies of nepotism and favoritism perpetuated by the disproportionately white County workforce, which effectively deprived African American applicants such as plaintiff of opportunities to compete for those jobs. No more is needed to establish plaintiff's standing here. See Tartt v. Wilson Co., Case No. 3:09-1179, Docket Entry No. 78 at 6-7; Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio, 263 F.3d 513, 526-30 (6th Cir. 2001).

Moreover, while defendant argues that, in order to state a disparate impact claim, plaintiff must allege "which specific practice caused what specific disparate impact," pursuant to Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 657 (1989), the Wards Cove decision does not apply this burden at the pleading stage:

> As a general matter, a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack. Such a showing is an integral part of the plaintiff's prima facie case in a disparate-impact suit under Title VII.
>
> [In addition to the statistics-based allegations of disproportionate numbers of minority employees due to, e.g., nepotism and subjective hiring practices,] [plaintiffs] will also have to demonstrate that the disparity they complain of is the result of one or more of the employment practices that they are attacking here, specifically showing that each challenged practice has a significantly

12

> disparate impact on employment opportunities for whites and nonwhites. . . .
>
> Some will complain that this specific causation requirement is unduly burdensome on Title VII plaintiffs. But liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their claims. . . . Plaintiffs as a general matter will have the benefit of these tools to meet their burden of showing a causal link between challenged employment practices and racial imbalances in the work force. . . .

Id. at 657-58. Accordingly, the undersigned finds that plaintiff's disparate impact claims are also sufficiently pled to withstand defendant's motion to dismiss.

## Recommendation

In light of the foregoing, the Magistrate Judge recommends that defendant's motion to dismiss be DENIED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 5th day of March, 2014.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE