IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HAROLD B. DAVIS )
)
v. ) NO. 3-13-0238
) JUDGE CAMPBELL
WILSON COUNTY, TENNESSEE )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 82). For the reasons stated herein, Defendant's Motion is GRANTED.

FACTS

Plaintiff is an African-American male who alleges that Defendant Wilson County, Tennessee, has a policy, custom or practice of intentionally discriminating against African-Americans in job opportunities and hiring and that Defendant discriminated against him. Plaintiff seeks money damages for disparate treatment in violation of 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and Tenn. Code Ann. § 4-21-101, *et seq*. ("THRA"). Plaintiff also contends that Defendant's practices have a disparate impact on African-Americans and other minorities, including Plaintiff, in violation of Title VII and the THRA.

Plaintiff asserts that Wilson County has a systematic practice of not advertising jobs and instead referring job openings to white friends and family. Plaintiff also alleges that Defendant has a practice of intentionally destroying the resumes of African-American job applicants, including Plaintiff's. He seeks money damages for Defendant's failure to hire him and for the alleged disparate impact which Defendant's practices have on African-Americans. Plaintiff contends that he was not

given a fair opportunity to compete equally with others for jobs with the Wilson County Government.

Defendant has filed a Motion for Summary Judgment, arguing that it is entitled to summary judgment on all of Plaintiff's claims.

SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

SPOLIATION OF EVIDENCE

Plaintiff asks this Court to apply, both on this Motion and at trial, an adverse inference from the fact that Defendant "destroyed the applications of Mr. Davis, and others, and has a practice and policy of destroying job applications." Docket No. 105, p. 5.

A party seeking a spoliation sanction must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[1] *Yoder & Frey Auctioneers, Inc. v. Equipmentfacts, LLC*, 774 F.3d 1065 (6th Cir. 2014); *Fieldturf USA, Inc. v. Astroturf LLC*, 2015 WL 2371608 at * 4 (E.D. Mich. May 18, 2015).

As explained more fully below, the Court finds that Plaintiff has not offered sufficient competent evidence that his job "applications" (actually his resumes) were intentionally destroyed by Defendant or that Wilson County has a practice and policy of intentionally destroying the job applications of minority applicants. Plaintiff has not presented evidence that Defendant destroyed job applications or resumes with a culpable state of mind. An adverse inference is not warranted in this case.

In any event, the Defendant *does* have copies of Plaintiff's resume. Plaintiff himself has represented that five departments of Wilson County did have copies of his resume, so the Defendant did not "destroy" all such evidence.

---

[1] It does not appear that the alleged destruction of Plaintiff's resumes in this case burdens Plaintiff's ability to prove his case; rather, it appears that the alleged destruction of his resumes is one of the underlying bases for his claim.

## STANDING

Defendant asserts that it is entitled to summary judgment on Plaintiff's race discrimination claims because Plaintiff does not have standing. Defendant argues that Plaintiff is a "tester," does not genuinely seek employment, and has not suffered any injury cognizable under Title VII, the THRA, Section 1981 or Section 1983.

Under Article III of the U.S. Constitution, the federal judicial power extends only to cases or controversies. The doctrine of standing gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process. *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 695 (6th Cir. 2015). To establish Article III standing, plaintiffs must show (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Id*.

The injury in fact requirement ensures that the plaintiff has a personal stake in the outcome of the controversy. *Green Party*, 791 F.3d at 695-96. To be sufficient, the injury must be concrete, particularized, actual and imminent, rather than conjectural or hypothetical. *Id*.

Defendant maintains that Plaintiff inquired about employment with Wilson County with no intent to accept any such job, but for the sole purpose of uncovering unlawful discriminatory hiring practices. Defendant asserts that Plaintiff was not harmed by a failure to hire because he was not seriously interested in the jobs for which he submitted resumes. For example, Plaintiff has admitted that he never conducted a search or called to see if there were any vacancies in the departments to which he sent resumes. He never followed up to see if his resume had been received or if any

positions had opened up. He applied for several jobs for which he had absolutely no experience.[2] Docket No. 118, ¶¶ 20-25. Plaintiff filed a Declaration (Docket No. 106, p. 107) in support of his claims in which he states that he was inquiring about jobs with the county when he went to the county offices and sent his resumes. He does not say that he was seeking employment.

The Court cannot find, on summary judgment, that the Plaintiff was or was not actually interested in employment with Wilson County because that determination involves credibility issues and factual disputes. Therefore, Defendant's Motion with regard to standing is denied.

## STATUTE OF LIMITATIONS

<u>Disparate Treatment</u>

Before a plaintiff alleging discrimination under Title VII can bring suit in federal court, he must file a timely charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). Pursuant to 42 U.S.C. § 2000e-5(e)(1), a charge is timely when filed with the EEOC within 180 days after the allegedly unlawful practice occurred or, if the aggrieved party initially instituted proceedings with a state agency, within 300 days of the alleged unlawful employment practice. *Nichols v. Muskingum College*, 318 F.3d 674, 677-78 (6th Cir. 2003). If the EEOC decides not to file its own action and issues a Notice of the Right to Sue, the complainant has ninety days from the giving of such notice to file a civil action. 42 U.S.C. § 2000e-5(f)(i).

---

[2] Defendant also notes that Plaintiff has filed at least six discrimination lawsuits against various employers and employment agencies; secretly recorded conversations with various Wilson County employees while applying for jobs; and met, before applying for jobs, with his attorney, who also filed suit against Wilson County alleging discrimination in hiring in the case of *Tartt v. Wilson County*, Case No. 3-09-cv-1179, which was decided by Judge Kevin Sharp of this Court.

Each discrete act of discrimination, such as termination or failure to hire, is a separate, actionable, unlawful employment practice, and a plaintiff can file a charge to cover only the discrete acts that occurred within the appropriate time period. *National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2073 (2002). A discrete act occurs on the day it happens, and such acts are not actionable if time-barred, even when they are related to acts alleged in timely-filed charges. *Sorey v. YRC, Inc.*, 2012 WL 38255 (M.D. Tenn. Jan. 6, 2012) (citing *National Railroad Passenger*).

Under the THRA, a civil cause of action must be filed within one year after the alleged discriminatory practice ceases. Tenn. Code Ann. § 4-21-311(d). A discrete discriminatory act "ceases" as of the time it occurs. *Booker v. The Boeing Co.*, 188 S.W.3d 639, 645 (Tenn. 2006). The Tennessee Supreme Court has held that an employee (or potential employee) discovers that an injury has been sustained for purposes of the statute of limitations when the employer provides unequivocal notice of the adverse employment action. "The employee, through his lawyer, must investigate the circumstances surrounding the employer's decision, and he has the time given him by the legislature to complete that investigation and file a complaint." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141,144 (Tenn. 2001).

Section 1983 has a similar one-year statute of limitations. Tenn. Code Ann. § 28-3-104(a)(3); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005).

Because the failure to hire is a discrete act, the continuing violation doctrine is not applicable to Plaintiff's failure to hire claim under Title VII, the THRA or Section 1983. *Sorey* at * 3; *Booker*, 188 S.W.3d at 645; *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

Defendant argues that Plaintiff's Title VII and THRA disparate treatment failure to hire claims are barred by the applicable statutes of limitations. The 28 letters and resumes Plaintiff

submitted to Defendant's various departments were sent between April 23 and May 11, 2011. Plaintiff was notified by several department heads that no positions were available, the last such notification being on May 24, 2011. Plaintiff testified in his deposition that by the end of May of 2011, he believed that he was not going to be offered a job with Wilson County. As noted above, Plaintiff never conducted a search or called to see if there were any vacancies in the departments to which he submitted resumes. He never followed up to see if his resume had been received or if any positions had opened up.[3]

The Court finds that Plaintiff has not identified a discrete act of failure to hire which occurred within the applicable statutes of limitations, and, therefore, Plaintiff's individual claims of disparate treatment for failure to hire under Title VII, the THRA and Section 1983 are barred. As to those claims, Plaintiff's EEOC charge filed on March 6, 2013, was untimely, and his lawsuit filed on March 18, 2013, was too late.

Plaintiff contends that failure to hire is not his only disparate treatment claim. He argues that he also brings claims for failure to keep his resumes on file, failure to recruit, and failure to provide equal opportunity to compete for jobs.

The Magistrate Judge indicated, in his earlier Report and Recommendation (Docket No. 69), that Plaintiff's inability to pinpoint the time-frame for any alleged destruction of his resumes was, *at that early stage of the proceedings*, sufficient reason to allow the claim of disparate treatment pursuant to the THRA. The instant Motion, however, is for summary judgment and requires more from the non-moving party than conclusory allegations.

---

[3] Plaintiff has admitted that, despite the fact that he had no previous experience in elections, Defendant interviewed him for the position of administrator of elections. Docket No. 118, ¶ 24.

Plaintiff has cited no authority to support the proposition that Defendant had a duty under Title VII, the THRA or Section 1983 to keep Plaintiff's unsolicited resumes indefinitely. The Court knows of no cause of action for failure to retain a person's resume, especially when the resumes were unsolicited and the employer had no job openings at the time. Plaintiff cannot expect to have an unlimited amount of time to sue Wilson County if its various departments failed to keep his resumes on file.

Plaintiff contends that Wilson County had a duty pursuant to its own policies and a federal regulation to keep his resumes on file. Failure to maintain an unsolicited resume does not give rise to a private right of action, even if it violates the Defendant's own policy.[4] Although a violation of the employer's own policies may be considered as a factor in determining whether there is pretext, *see Marshall v. Belmont County Bd. of Commissioners*, __ F.3d __, 2015 WL 2406100 at * 8 (S.D. Ohio May 20, 2015), Plaintiff has not shown that Wilson County's failure to follow its own retention policies creates a cause of action for disparate treatment or impact.[5]

In any event, even though Plaintiff asserts that he did not discover that his resume had been "destroyed" by several of Defendant's departments until between October 2012 and January 2013, he has not cited admissible evidence of any specific act of intentionally destroying his resume by any person or department of Defendant at any specific time. Plaintiff has the burden, not Defendant, to show that a discrete discriminatory act occurred during the applicable time period.

---

[4] Although Plaintiff describes the Wilson County Retention Policies in his Amended Complaint (Docket No. 23), neither side has cited the Court to a place in the record where it could find the actual policies.

[5] Similarly, although the federal regulation cited by Plaintiff, 29 C.F.R. 1602.31, requires the retention of personnel records by governmental entities, Plaintiff has not shown that the federal regulation creates a private right of action.

Plaintiff uses the word "destroyed" to describe the fact that Plaintiff's resume was not found among the records produced from some of Defendant's departments in response to an Open Records Act request fifteen months after he sent the resumes. Plaintiff has not offered evidence, however, of any intentional destruction by Defendant of his resumes. In fact, Plaintiff has conceded that he has no direct knowledge that someone threw his resumes away. Docket No. 118, ¶ 19.

Moreover, as noted above, Wilson County, which is the sole Defendant in this case, *did* retain Plaintiff's resume, at least five copies of it, even if some of the individual departments within the County did not. Plaintiff has not offered evidence that he followed up on the unsolicited submission of his resumes at a later time to see if there were any jobs available. He testified in deposition that he did not call any of the departments to follow up and see if they got his letters.

Plaintiff also argues that part of his disparate treatment claim includes failure to provide an equal opportunity to him. Again, Plaintiff has not cited a specific instance within the applicable statute of limitations of his being denied an opportunity for a job (which was vacant) because of his race. The Court knows of no cause of action for failure to recruit or failure to contact Plaintiff when a job becomes available months, even years, after he submitted his unsolicited resume (with no follow-up whatsoever).

Thus, Plaintiff has not provided evidence of any discrete discriminatory act which amounts to an adverse employment action under Title VII or the THRA and which occurred within the applicable statutes of limitations. Similarly, Plaintiff has not shown a discrete discriminatory act which amounts to a violation of the Equal Protection Clause under Section 1983 and which occurred within its applicable one-year statute of limitations. Plaintiff's disparate treatment claims under Title VII, the THRA and Section 1983, therefore, are time-barred.

9

With regard to Plaintiff's Section 1981 claim, the statute of limitations is different. Claims under the 1991 amendments to Section 1981 are governed by the federal "catch-all" four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 124 S.Ct. 1836, 1845-46 (2004); *Johnson v. Federal Express Corp.*, 996 F.Supp.2d 302, 314 (M.D. Pa. 2014). Thus, Plaintiff's failure to hire claims for any discrete acts which arose after March 18, 2009 (four years prior to his lawsuit), are not time-barred under Section 1981, although the Court ultimately finds that Plaintiff has failed to establish a *prima facie* case with regard to those claims.

<u>Disparate Impact</u>

Plaintiff's Amended Complaint alleges that the challenged practices of Wilson County have a disparate impact on African-Americans and other minorities, including Plaintiff. Specifically, Plaintiff identifies the following practices as having a disparate impact: (1) no or very limited advertising of job openings; (2) subjective hiring decisions by all white decision-makers who favor friends, family and those connected to friends and family; (4) destruction of job applications of African-Americans; and (5) failure to keep race and ethnic information regarding job applicants. Docket No. 23.

Defendant argues that Plaintiff's disparate impact claims are barred because Plaintiff has not identified a specific act of discrimination - that is, use of a specific policy or practice which resulted in a disparate impact - within the applicable statute of limitations periods. To prevail on a disparate impact claim, a plaintiff must demonstrate that an employer *uses* a particular employment practice that causes a disparate impact. 42 U.S.C. § 2000e-2(k)(1)(A)(i) (emphasis added). In *Lewis v. City of Chicago*, 130 S.Ct. 2191, 2197-99 (2010), the Supreme Court interpreted this language to mean that every "use" of an employment practice that causes a disparate impact is a separate actionable

10

violation of Title VII with its own 180- or 300-day statute of limitations clock. *See also Briscoe v. City of New Haven*, 967 F.Supp.2d 563, 572 (D. Conn. 2013). Thus, where the defendant applies an employment practice during the limitations period, the plaintiff's claim challenging that action is not time-barred, even if the defendant made the decision to adopt the practice outside the limitations period. *Enoch v. Becton, Dickinson & Co.*, 2012 WL 2371049 at * 4 (D. Md. June 22, 2012) (citing *Lewis*, 130 S.Ct. at 2195).

In response to Defendant's Motion, Plaintiff has alleged many instances when white county employees hired other white employees and/or family members of white employees. Unfortunately, Plaintiff has not indicated when most of these alleged discriminatory acts occurred. For example, at pages 6 and 7 of Plaintiff's Response (Docket No. 105), he cites testimony from May 12, 2009, May 14, 2009, and January 26, 2010, to support his claim of county employees' hiring family members and friends; but he does not indicate when these allegedly discriminatory acts occurred. Obviously they occurred before the above deposition dates, however, and those deposition dates are more than one year before Plaintiff's EEOC charge and the filing of this lawsuit.

Similarly, Plaintiff alleges pages of narrative descriptions of county employees who hired friends and family (Docket No. 105, pp. 7-15), but most include no indication of when those "uses" of the alleged discriminatory policies or practices occurred. The allegations which include dates are the dates of deposition testimony, not the dates of the actual occurrences, and none of those dates is within the one-year statute of limitations.

Plaintiff includes within his Response a Table comparing the numbers of black county employees in 2009 and in 2013 (Docket No. 105, p. 20). Putting aside authenticity and admissibility issues, the single comparison of the number of black employees in 2009 to the number of black

11

employees in 2013 does not provide any information about when the alleged hires or failures to hire occurred, under what circumstances, whether African-Americans applied for the jobs, or whether African-Americans who applied were qualified for the jobs.

Plaintiff asserts that Wilson County Sheriffs, both former and current, were heard to make racial slurs on various occasions, but no dates are indicated. Docket No. 105, pp. 20-21. Plaintiff cites statistics produced in discovery for the premise that there are not enough African-Americans in the Sheriff's Department, yet the simple ratio alone gives the Court no information about when the alleged hires or failures to hire occurred or under what circumstances.

Plaintiff contends, with no citation to the record, that five people, all white, were hired by the Wilson County Circuit Court Clerk after Plaintiff sent his resume. Docket No. 105, p. 21. There is no evidence that Plaintiff was qualified for these positions, even if there were competent evidence in the record (which there is not) about when these people were hired or the circumstances under which they were hired. Plaintiff also alleges that a white female was hired in the Trustee's Office in August of 2011, three months after he sent his resume, again more than one year before his EEOC charge or this lawsuit. Docket No. 105, p. 22.

Plaintiff's allegations concerning other hires in the Wilson County Clerk's Office, the Elections Department, and the Clerk and Master's Office all occurred outside the applicable statute of limitations except for the May 2013 hiring of Amy Scott, a white female, in the office of the Wilson County Clerk. Docket No. 105, p. 23. Plaintiff also contends that the Mayor's Office hired Dakota Weatherford (race not identified) in May of 2013 to be a Special Projects Coordinator. *Id*. There are no citations to the record, however, for Plaintiff's claims that these two persons were hired in May 2013 and no citation to evidence showing the circumstances of these hires.

12

Finally, as indicated above, Plaintiff argues that the "smoking gun" is the fact that a white male was hired in February 2012 as Director of Veterans Services when Plaintiff was more qualified for that job. Actions taken in February 2012 are outside the statutes of limitations applicable to Plaintiff's disparate impact claim.

Every "use" of an employment practice that causes a disparate impact is a separate actionable violation of Title VII with its own 180- or 300-day statute of limitations clock. *See Briscoe v. City of New Haven*, 967 F.Supp.2d 563,572 (D. Conn. 2013). Plaintiff has failed to identify a specific instance within the applicable statute of limitations in which Defendant "used" a specific policy or practice which resulted in a specific disparate impact on African-Americans. Plaintiff has admitted that he has no personal knowledge about any other person or instance of alleged discrimination in Wilson County. Docket No. 118, ¶ 18.

For these reasons, the Court finds that Plaintiff's disparate impact claims are barred by the statutes of limitations under Title VII and the THRA.[6] Plaintiff has failed to show, by competent evidence, the use - within the time periods required - of a specific employment practice that caused a disparate impact on the hiring of African-Americans in Wilson County.

## DISCRIMINATION

Disparate Treatment

With respect to Plaintiff's remaining Section 1981 claim and as an alternative ground for dismissing Plaintiff's Title VII, THRA and Section 1983 claims, the Court also finds that Plaintiff has not established a *prima facie* case of disparate treatment.

---

[6] There are no claims for disparate impact under Section 1983 or Section 1981.

Under the seminal case of *McDonald Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish a *prima facie* case, Plaintiff must show that (1) he belongs to a racial minority; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications.[7] *Id*. at 802; *see also Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).[8]

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If it does so, the burden returns to the plaintiff to show that the defendant's reason was a pretext for discrimination. *Sybrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557-58 (6th Cir. 2009). Throughout this burden-shifting approach, the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate. *Id*.

No one disputes that Plaintiff belongs to a racial minority. Plaintiff has not shown that he applied for a job for which Defendant was seeking applicants, however.[9] Moreover, Plaintiff has not shown that he was qualified[10] for a vacant position and was rejected. Plaintiff cannot show that,

---

[7] Plaintiff's THRA, Section 1983 and Section 1981 claims are analyzed in the same fashion as his Title VII claim. *Harper v. BP Exploration & Oil Co.*, 896 F.Supp. 743, 747 (M.D. Tenn. 1995); *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1094 (6th Cir. 1996); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000).

[8] Plaintiff argues that he has direct evidence of discrimination, but that evidence is hearsay. Moreover, there is no indication when the instances referenced occurred.

[9] Neither side has pointed the Court to any evidence that Plaintiff actually "applied" for any specific job. He alleges that he sent resumes, with cover letters, to various departments in the Wilson County Government, not that he applied for specific jobs.

[10] A plaintiff's personal belief that he was treated unfairly as premised on his own assessment of his skills and abilities is not evidence of discrimination. *Felder v. Nortel*

after his rejection, the position remained open because he has not identified a position that was open to start with or a position for which he was specifically rejected. Moreover, Plaintiff has failed to show a causal connection between Defendant's allegedly discriminatory actions and his failure to get any certain job.

In order to establish his claim, Plaintiff must show that he applied for an available position. *Burks v. Mill Creek Lumber & Supply Co.*, 2012 WL 1536928 at * 7 (N.D. Okla. April 30, 2012). It is simply not sufficient for Plaintiff merely to assert that he was generally denied "available positions," but instead he must come forward with evidence of a specific vacant position for which he was qualified and on which his claim is based. *Burks* at * 7 (citing *Kasper v. Safeco Ins. Co. of America*, 212 F.Supp.2d 1264, 1272 (D. Kan. 2002)).

Defendant has offered as one of its reasons for the failure to hire the fact that there were no vacancies. Plaintiff has not identified a specific available job which he was seeking and for which he was qualified or a specific available job for which Defendant refused him the opportunity to apply. Plaintiff has failed to show that someone with hiring authority influenced or caused him to experience an adverse employment action because of his race.

Because Plaintiff has not established a *prima facie* case of disparate treatment, his claims under Section 1981 must be dismissed. His claims under Title VII, the THRA, and Section 1983 alternatively fail for that reason as well.

Disparate Impact

---

*Newworks Corp.*, 187 Fed. App'x 586, 594 (6th Cir. 2006).

The Court also finds, as an alternative basis for this decision, that Plaintiff has not established a *prima facie* case of disparate impact under Title VII and the THRA.

To establish a *prima facie* case of disparate impact, Plaintiff must (1) identify a specific employment practice to be challenged and (2) prove through relevant statistical analysis that the challenged practice has an adverse impact on a protected group. *Tartt v. Wilson County, Tenn.*, 592 Fed. App'x. 441, 447 (6th Cir. 2014). Plaintiff must also have a personal stake in the outcome of the controversy and must have suffered some real or threatened injury. *Id*. The Plaintiff, thus, must show that the challenged policy directly disadvantaged him in some fashion. *Id*.

A disparate impact case is one in which a facially-neutral employment policy has the effect of treating individuals in the protected class less favorably. *Moore v. Nashville Electric Power Bd.*, 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001); *Dunlap v. Tenn. Valley Authority*, 519 F.3d 626, 629 (6th Cir. 2008). Plaintiff contends that the "particular employment practice alleged here is that all white managers and decision makers refuse to advertise job openings and instead refer these job openings to other white friends and family." Docket No. 105, p. 28.

Under the second prong of the *prima facie* test, Plaintiff must prove through relevant statistical analysis that the challenged practice has an adverse impact on a protected group.

Plaintiff offers the statistical analysis of an expert witness from another case,[11] information which relies on data from the 2000 census and other information which ends with 2009 (outside the statute of limitations for this case). Plaintiff alleges that "[L]ittle has changed since Dr. Sharp's report based on 2009 data." Docket No. 105, p. 19. He offers a comparison of "updated 2013 data

---

[11] The *Tartt v. Wilson County* case referenced above.

produced by Defendant in discovery" with Sharp's 2009 data to allege that the number of African-Americans employed by Wilson County remains effectively the same.[12]

Dr. Sharp's analysis does not satisfy Plaintiff's burden because the data used is no longer relevant; it is information from six years ago at the latest. This evidence is insufficient to connect the challenged policy with an adverse impact on African-Americans.[13] Moreover, Dr. Sharp's analysis is not relevant because it does not demonstrate the numbers of African-Americans qualified for the open positions. Employee statistics unaccompanied by evidence regarding qualified potential applicants from the relevant labor market lack probative value. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 761-62 (6th Cir. 2000).

Plaintiff also alleges in his Amended Complaint, from the fact that not all 28 copies of his resumes were found in Defendant's departments' records fifteen months after he sent them, that Wilson County has a *policy and practice* of intentionally destroying the job applications of African-Americans. Plaintiff summarily concludes that his resumes were systematically destroyed by Defendant, yet, as shown above, he has no proof of that fact. Moreover, Plaintiff has cited no authority for the proposition that there is a private right of action for the alleged failure to keep resumes.

Plaintiff cites a declaration of Kristi Holbrook for his claim that the County Trustee threw an applicant's resume in the trash, yet there is no indication when this occurred, whose resume it

---

[12] As explained above, the single comparison of the number of black employees in 2009 with the number of black employees in 2013 does not provide any information about the circumstances under which the hires and/or failures to hire occurred, whether African-Americans applied for the jobs, or whether African-Americans who applied were qualified for the jobs.

[13] Plaintiff also relies upon information from 2007 and 2009 in his Response brief to try to establish the statistical evidence necessary in this regard.

17

was, or the race of that person. Docket No. 105, p. 22. The fact that Karl Tartt *alleged* that his resume was thrown in the trash is not competent evidence to support Plaintiff's claim; neither is the testimony of Paige Heriges that, at some unknown time, she saw a black applicant's application thrown in the trash by some unknown person.

Finally, Plaintiff contends that Defendant has a policy or practice of not keeping racial or ethnic information about job applicants. He fails to identify any duty of Wilson County to keep such information or cite any authority which creates a private right of action for failure to keep such information.

## CONCLUSION

For all the reasons explained herein, Defendant's Motion for Summary Judgment (Docket No. 82) is GRANTED, and Plaintiff's Amended Complaint is DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE